# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COLE-HADDON, LTD., an Illinois Corporation,<br>            Plaintiff,<br>v.<br>THE DREW PHILIPS CORP., a New York Corporation, d/b/a FASHIONISTA, d/b/a SUPPLY & DEMAND,<br>            Defendant. | No. 06 C 0401<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER (AMENDED)

Plaintiff Cole-Haddon, Ltd. ("Cole-Haddon") filed a complaint against Andrew Cohen, d/b/a Drew Philips Corp., d/b/a Fashionista, d/b/a Supply & Demand ("Drew Philips"), alleging breach of contract, failure to pay commissions in violation of 820 ILCS §120, quantum meruit, and requesting an action for accounting. (R. 1, Compl.)[1] Before the Court is Drew Philips's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (R. 16, Def.'s Mot. to Dismiss. ¶ 1.) For the foregoing reasons, Drew Philips's motion to dismiss is denied in part and granted in part.

---

[1] Pursuant to Federal Rule of Civil Procedure 21, the parties substituted Drew Philips for Andrew Cohen, who is the Chief Executive Officer of Drew Philips and was improperly named as the defendant in the original complaint. (R. 22, Stipulation for Party Substitution.) As a result of this substitution, Defendant has withdrawn the portions of the motion to dismiss that relate to misnaming of the proper defendant.

1

## RELEVANT FACTS

Drew Philips, a clothing designer and manufacturer operating under the labels "Fashionista" and "Supply & Demand," employed Cole-Haddon as an independent sales representative to solicit orders for its merchandise in Illinois and throughout the Midwest beginning in September 2001. (R. 1, Compl. ¶ 7.) The parties had an Agreement whereby Drew Philips paid Cole-Haddon a commission of twelve (12%) percent of the business procured by Cole-Haddon. (R. 1, Compl. ¶ 8.) Drew Philips never returned a signed copy to Cole-Haddon, although the parties worked under the terms of this Agreement for the duration of their relationship. (R. 23-1, Pl.'s Mem. Opposing Def.'s Mot. to Dismiss at 4.) The Agreement did not state exactly how commissions were to be calculated, but that commissions would be paid "on accounts worked ... net of cancellations, returns, discounts and allowances." (R. 23-3, Haddon Aff., Ex.1, Contract).

In its complaint, Cole-Haddon asserts that Drew Philips had numerous performance problems throughout the parties' relationship, including failing to provide Cole-Haddon with shipment reports, commission statements, open order reports, and other information that would enable Cole-Haddon to track its business with Drew Philips. (R.1, Compl. ¶ 11.) Cole-Haddon also maintains that Drew Philips failed to ship the necessary goods to fulfill purchase orders, failed to provide information regarding order cancellations and other credits, and was consistently late in the payment of commissions. (R. 23-1, Pl.'s Mem. Opposing Def.'s Mot. to Dismiss at 5.)

Drew Philips, however, argues that Cole-Haddon's claim should be dismissed because it owes Cole-Haddon no more than $15,320,[2] which does not meet the jurisdictional minimum required for federal diversity jurisdiction. (R. 24-2, Cohen Reply Aff. ¶ 11.) In addition, Drew Phillips argues that it complied with all of its obligations under the Agreement and that all payments were received and accepted by Cole-Haddon without complaint. (R. 15-1, Mem. in Supp. of Def.'s Mot. to Dismiss at 2.) Drew Philips further alleges that Cole-Haddon dropped Drew Philips's lines without warning and refused to continue showing its lines mid-season, making it impossible for Drew Philips to find a replacement sales representative and book any orders in the Midwest territory. (*Id.*) Cole-Haddon argues that in March 2005, Andrew Cohen terminated the parties' Agreement, and since then Drew Philips has refused to pay or account for commissions in excess of $92,000 owed to Cole-Haddon. (R. 23-1, Pl.'s Mem. Opposing Def.'s Mot. to Dismiss.)

## LEGAL STANDARDS

According to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), this Court must accept the well-pleaded allegations in the complaint as true and resolve all inferences in the complaint in favor of the plaintiff. *Cler v. Illinois Educ. Ass'n.*, 423 F.3d 726, 729 (7th Cir. 2005). When reviewing a motion to dismiss, this Court may only dismiss a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). To survive a motion to dismiss, the plaintiff's pleading need only contain enough information to inform the court and

---

[2]Drew Philips also argues in its motion to dismiss that at most this amount is $14,996.36. (R. 15-1, Mem. in Supp. of Def.'s Mot. to Dismiss at 4.) Although Defendant presents two different amounts supposedly owed under the Agreement, this fact is irrelevant for the purposes of resolving this motion since both amounts are well below the amount in controversy required for federal jurisdiction.

the defendant of the basis for the complaint. *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000).

## ANALYSIS

### I. Subject Matter Jurisdiction

Federal district courts have original jurisdiction over civil actions only when there is diversity of citizenship and when the amount in controversy exceeds $75,000. 28 U.S.C. §1332(b) (2006). Diversity of citizenship is not at issue because the dispute involves an Illinois corporation and a New York corporation. Drew Philips argues, however, that the jurisdictional minimum was not met.

In determining the amount in controversy, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). This Court must accept a plaintiff's allegation of the amount in controversy "from the face of the pleadings" unless "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *Id.* at 289. Additionally, if the complaint includes a number, as it does in this case, "it controls unless recovering that amount would be legally impossible." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006). If the court's jurisdiction is challenged as a factual matter by either the court or the opposing party, "the plaintiff must support its assertion with 'competent proof,' which means 'proof to a reasonable probability that jurisdiction exists.'" *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995).

Drew Philips argues that commissions were calculated from orders that were paid for and shipped, and Cole Haddon received twelve percent of payments actually received. (R. 15-1, Def.'s Mem. in Supp. of Mot. to Dismiss at 7.) Drew Philips calculated that it received a total of

$1,175,853 for orders booked by Cole-Haddon. Therefore, it owed Cole-Haddon twelve percent of this amount, or $141,102.36. (*Id.*) Drew Philips argues that since it has already paid Cole-Haddon $126,106 in commissions, the most that Cole-Haddon could possibly be owed is $14,996.36. (*Id.*) In contrast, Cole-Haddon maintains that as long as Drew Philips accepted or confirmed a customer order, Cole-Haddon deserved a commission. (R. 23-3, Haddon Aff. ¶ 4.) Cole-Haddon argues that it procured $1.7 million in sales for Drew Philips, of which it was owed $208,000 in commissions. (R. 23-1, Pl.'s Mem. in Opp. to Summ. J. at 6.) It argues that Drew Philips only paid $115, 923.81 in commissions, leaving $92,168 in unpaid commissions. (*Id.*)

Drew Philips argues that Cole-Haddon is not in possession of documentation necessary to track orders received and therefore cannot satisfy its legal burden to demonstrate with any certainty that it meets the jurisdictional requirement. (R. 15-1, Def.'s Mem. In Supp. Of Mot. To Dismiss at 4.) Cole-Haddon, however, submits several documents including a spreadsheet and an affidavit by Patrick Haddon, the owner of Cole Haddon, (R. 23-3, Ex. 2), explaining the method they used to calculate the dollar amount owed in commissions. Cole-Haddon uses the amount $1,734,103 from which it calculates the twelve (12%) percent commissions (R. 23-3, Haddon Aff. ¶ 5), while Drew Philips argues that the amount from which the commissions should be calculated is $1,175,853, which is the total amount of all orders that were paid for by customers. (R. 4, Cohen Aff. ¶ 11.)

Drew Philips argues that the Agreement provided that commissions were to be calculated "net of cancellations, returns, discounts and allowances" and Cole Haddon's methodology is based on a gross number, without any of the required deductions for cancellations, returns, discounts and allowances. (R. 24-2, Cohen Aff. ¶¶ 5.) Based on the spreadsheet submitted by Cole Haddon that documents the orders it booked, even if this Court subtracts the orders that

were cancelled or refused by Drew Philips, Drew Philips still owes approximately $80,000 in commissions, an amount which meets the jurisdictional requirement. This Court is required to view the record in the light most favorable to Cole-Haddon, and at the very least, this shows that it is legally possible that Cole Haddon is owed an amount sufficient to meet the jurisdictional minimum.

Cole-Haddon also claims Drew Philips owes punitive damages for failing to timely pay "commissions due at the time of termination," as provided in the Illinois Sales Representative Act, 820 ILCS §120/2. (R. 1, Compl. ¶ 25.) Cole-Haddon argues that this conduct and other violations of 820 ILCS §120/3 justify punitive damages, which would further satisfy Cole-Haddon's burden to meet the threshold amount in controversy. (R. 1, Compl. ¶ 27.) Because we have determined that Cole-Haddon has met the amount in controversy requirement, we do not have to reach this issue.[3] Accordingly, Drew Philips's motion to dismiss for lack of subject matter jurisdiction is denied.

## II.    Failure to State a Claim

### A.    Quantum Meruit

Cole-Haddon argues that in the event that the Court finds that the Agreement between the parties is unenforceable because it was not signed by both parties, it should be compensated for Drew Philips' alleged unjust enrichment under the doctrine of quantum meruit. (R. 1, Compl. ¶ 33; R. 23-3, Pl.'s Mem. in Opp. to Summ. J. at 10-11.) Drew Philips maintains that because Cole-Haddon has already claimed the existence of a contract and did not properly plead its

---

[3]Even if we did resolve this issue, it is likely that Cole Haddon would not be able to prove that it is entitled to punitive damages. Under the Illinois Sales Representative Act, punitive damages are awarded only for "conduct involving an element of outrage similar to that normally found in crime" where defendant's acts were done with an "evil motive" or with "reckless indifference." *Hedrick-Walker Assocs., Inc. v. Viktron Technologies, Inc.*, 878 F. Supp. 119, 121 (N.D. Ill. 1995). Cole-Haddon has not alleged that Drew Philips acted with the requisite evil motive or reckless indifference, just that they refused to pay commissions. (R. 1, Compl. ¶ 27.)

complaints in the alternative, it may not seek relief based on the implied contract theory of quantum meruit. (R. 15-1, Mem. in Supp. of Def.'s Mot. to Dismiss.)

Where the plaintiff asserts that the parties have an express contract governing their relationship, "the doctrine of unjust enrichment has no application" and the count for unjust enrichment must be dismissed. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 497 (1992); *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, 03 C 9421, 2004 WL 3363844, *16 (N.D. Ill. Dec. 28, 2004) (". . . for [unjust enrichment] to be offered in the alternative to the contract claim it may not allege the existence of a contract governing the parties' relationship."). Thus, while Federal Rule of Civil Procedure 8(e) allows parties to state claims in the alternative even if the claims are contradictory, Cole-Haddon does not properly plead the claim in the alternative, but rather, asserts the existence of a contractual agreement and then requests compensation under quantum meruit. Specifically, paragraph 29 of the complaint reasserts all allegations previously stated, including those claiming the existence of a contract.[4] For this reason, the Court grants Drew Philips' 12(b)(6) motion to dismiss for failure to state a claim. *See AA Sales & Assoc., Inc. v. T Prods.*, 48 F. Supp. 2d 805, 808 (N.D. Ill. 1999) (dismissing the plaintiff's quantum meruit claim where the plaintiff alleged the existence of a contract); *Team Impressions v. Chromas Techs. Can.*, 02 C 5325, 2003 WL 355647, * 4 (N.D. Ill. Feb. 18, 2003); *Nesby v. Country Mut. Ins. Co.*, 346 Ill. App. 3d 564, 567 (Ill. App. 2004).

However, because the Court recognizes that the standard for filing complaints in federal court is merely notice pleading, *see* Fed. R. Civ. Pro. 8(a), the motion is granted without prejudice. In another case from this district, *Shoplocal LLC v. Cairo*, Judge Conlon found that

---

[4]In a factually similar case, *Homestead Ins. Co. v. Chicago Transit Auth.*, 96 C 4570, 1997 WL 43232 (N.D.Ill. January 23, 1997), the court dismissed the plaintiff's unjust enrichment claim because the complaint did not properly plead the claims in the alternative. According to the court, "[t]he unjust enrichment claim... adopts by reference all the allegations in the contract claim... including paragraphs alleging an express contract between the parties." *Id.* at * 4.

the plaintiff did not have to plead unjust enrichment in the alternative where the unjust enrichment claim is based in tort. 05 C 6662, 2006 U.S. Dist. LEXIS 7768 (N.D. Ill. February 27, 2006). In this case, Cole-Haddon is not asserting that its unjust enrichment claim is based on Drew Philips's tortious conduct, but instead it is pleading it as an alternative claim. Consequently, this Court will follow numerous other courts in finding that this count was not properly pled. *See, for example, AA Sales & Assoc., Inc.*, 48 F. Supp. 2d at 808; *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, 2004 WL 3363844 at * 16. Nonetheless, we believe that Judge Conlon rightly recognized that pleading under the Federal Rules is a *federal* procedural issue, not a matter of state law; therefore, this Court, even when applying state law, has to be cognizant of the notice pleading standards of federal court. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("pleading is [not] a game of skill"; its purpose "is to facilitate a proper decision on the merits"). Accordingly, Cole-Haddon may seek to amend its complaint to properly plead its quantum meruit claim at some future appropriate date.

**B.     Action for Accounting**

Cole-Haddon requests an action for a full accounting from Drew Philips of all sales, shipments, and revenues received by Drew Philips on the orders placed by Cole-Haddon prior to the termination of the Agreement. (R. 1, Compl. ¶ 37.) Cole-Haddon claims that the amount to be accounted for is over $675,000 of business procured by Cole-Haddon. (*Id.* ¶ 36.) Drew Philips argues that discovery is the proper time for Drew Philips to provide the sought after documentation. (R. 15-1, Reply Mem. in Supp. of Def.'s Mot. to Dismiss at 8.) In order to plead a claim for accounting in equity under Illinois law, "the complaint must allege the absence of an adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts

which are of a complex nature." *Mann v. Kemper Fin. Cos.*, 247 Ill. App. 3d 966, 980 (Ill. App. Ct. 1992).

Cole-Haddon does not allege that it lacks an adequate remedy at law, and in fact, has an adequate remedy under its breach of contract and failure to pay commissions claims. *See 3Com Corp. v. Electronics Recovery Specialists*, 104 F. Supp. 2d 932, 941 (N.D. Ill. 2000) (noting that courts have dismissed accounting claims where breach of contract is alleged); *see also Midwest Neoped Associates, Ltd. v. Allmed Financial Corp.*, 1999 WL 674747, at *1-2 (N.D. Ill. Aug.23, 1999); *Oil Express National, Inc. v. Latos*, 966 F. Supp. 650, 652 (N.D. Ill.1997). Furthermore, Cole-Haddon incorporates those portions of its complaint alleging the existence of a contract in its claim for an action for accounting. *See* R. 1, Compl. ¶ 34. Citing *Ferrara v. Collins*, 457 N.E.2d 109 (Ill. Ct. App. 1983), Cole-Haddon asserts that it is the discretion of the Court as to whether an accounting is ordered and that there are "no precise guidelines for determining when an accounting is warranted, since the right depends on the circumstances of the particular case and the relief sought." *Id.* at 111. In this circumstance, however, Drew Philips provided many of the documents requested by Cole-Haddon in Andrew Cohen's reply affidavit. (R. 24-2, Cohen Reply Aff., Exs. A-D.) Furthermore, complete financial information and business records will be provided during discovery, and this information is not essential at this stage of the proceedings. Even if this Court were to find that Cole-Haddon lacked an adequate remedy at law by virtue of the fact that we are allowing it to re-plead its quantum meruit claim (which is an equitable, not a legal, remedy), Cole-Haddon does not allege the existence of mutual accounts, or any fraud or breach of fiduciary duty on the part of Drew Philips, which dooms its claim for action for accounting. Therefore, the Court grants Drew Philips' motion to dismiss the action for accounting with prejudice.

## CONCLUSION

This Court grants in part and denies in part Drew Philips's motion to dismiss. (R. 1, Def.'s Mot. to Dismiss ¶ 1.) The Court grants the motion to dismiss for failure to state a claim under Rule 12(b)(6) as to Cole-Haddon's claims for quantum meruit, but without prejudice. However, the Court grants the motion to dismiss with prejudice as to Cole Haddon's action for accounting. This Court denies Drew Philips's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

The parties are urged to reconsider their final settlement positions in light of this opinion. Both parties should exchange mandatory disclosure information pursuant to Fed. R. Civ. P. 26(a)(1) on or before September 1, 2006. This Court will hold a settlement conference on September 14, 2006 at 10:30a.m. unless the parties inform this Court that they have resolved this lawsuit without the Court's assistance. The parties are expressly requested to discuss all settlement possibilities.

ENTERED: _/s/_

Judge Ruben Castillo
United States District Court

**Dated:** October 4, 2006